**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OHIO**

---------------------------------------------------------------X

ZSPEC DESIGN LLC,

Plaintiff,

-against-

**COMPLAINT**

TITANIUM LLC,

Index No. 26-CV-____

Defendant.

---------------------------------------------------------------X

Plaintiff, by its attorney, Todd Wengrovsky, respectfully sets forth and alleges:

## I. JURISDICTION

1. This is an action for trademark infringement under 15 USCS 1051, et. seq. The Court has jurisdiction over the claim under 15 USCS 1051 et seq., as well as 28 USCS 1331(a) and 1338(a), 28 USCS 1338(b), and the doctrine of pendent jurisdiction.

## II. VENUE

2. Venue is vested in this Court pursuant to 28 USCS 1391 and 1400 in that the claims asserted here arose within this district, and that Plaintiff's principal place of business is located within this district.

## III. THE PARTIES

3. At all relevant times, Plaintiff ZSPEC Design, LLC. ("ZSPEC" or "Plaintiff") is and was a limited liability company organized and existing under the laws of the State of Ohio. Plaintiff's address is 8845 Hikers Trail, Chardon, Ohio 44024.

4. Upon information and belief, at all relevant times, Defendant Titanium LLC ("Titanium" or "Defendant") is and was a limited liability company organized and existing under the laws of the Commonwealth of Virgina, with an address of 1030 McConville Road, Suite 6, Lynchburg, Virginia 24502, and/or 119 South Pollard Street, P.O. Box 340, Vinton VA 24179.

## IV.
## BACKGROUND AND FACTS

### A. Plaintiff's Business And Registered Trademark

5. ZSPEC sells automobile fasteners and hardware products at the national and international level, and has been doing so since 2008.

6. One of ZSPEC's trademarks is "DRESS UP BOLTS". ZSPEC selected this mark as a catchy phrase that was relevant to its products, and ZSPEC adopted the mark due to no conflicts being found in a trademark search.

7. ZSPEC has been consistently using "DRESS UP BOLTS" since 2008 to refer to its hardware products, such as stainless steel, billet, and titanium products.

8. ZSPEC's DRESS UP BOLTS products have been integral to differentiating its company from pure-play vendors that do either accessories without customization, or only limited styles of hardware. ZSPEC bolsters its accessories with its hardware and also offers the widest range of hardware types and finishes.

9. Starting from 2008, ZSPEC has always expended significant advertising dollars to promote its mark.

10. To provide examples of usage of the mark, ZSPEC has used print advertisements for car shows, Facebook, Instagram, and promoted the mark at a variety of national events at which ZSPEC was a vendor / sponsor, a variety of regional events such as Midwest Z Heritage, Branson Z Fest, East Coast Z Nationals, and a variety of regional "dealer" shows.

11. ZSPEC began using the mark on its http://zspec.us/ website in 2013. ZSPEC's domain name http://zspec.us/ was registered on April 19, 2013, per GoDaddy.com.

12. ZSPEC also began using the mark on its domain name https://zspecdesign.com/, which was registered on September 29, 2015, per GoDaddy.com.

13. ZSPEC's usage of the mark has always been made in the ordinary course of business and not for the purpose of reserving rights to the mark.

14. ZSPEC filed United States Trademark Application Serial Number 88/354,823 for the mark DRESS UP BOLTS on March 25, 2019.

15. ZSPEC was then granted Registration Number 5,868,348 for the mark DRESS UP BOLTS, used in connection with "Metal bolts; Metal hardware, namely, washers", on September 24, 2019. A copy of the Registration is attached hereto as **EXHIBIT A**. ZSPEC's Registration remains in full force and effect, and it is presumed to be valid.

## B. Defendant's Infringement Of Plaintiff's Registered Trademark

16. Defendant Titanium is using the mark "DRESS UP BOLTS" in connection with the identical products as Plaintiff – metal bolts and metal hardware for automobiles, including washers. Defendant's products are therefore clearly within the identification listed on Plaintiff's Trademark Registration.

17. For the purposes of example, as shown in **EXHIBIT B** attached hereto, Defendant's website currently uses the mark in large, prominent type together with Defendant's products.

18. Defendant's competing business, like Plaintiff's, is national in nature, promoting the products to all states.

19. Defendant's products, like Plaintiff's, are design enhancements to sports cars that are marketed specifically to automotive enthusiasts.

20. Per 15 U.S.C. 1114, a plaintiff's trademark is protected by Federal law against infringement by use of colorable imitations of the mark which are "likely to cause confusion, or to cause mistake, or to deceive."

21. Here, "DRESS UP BOLTS" has appeared prominently on Defendant's product packaging, advertising, and promotional materials, which is identical to Plaintiff's Registered Trademark. Whether advertised in print, electronically, or by any other means, consumers will not detect any differences between the marks of Plaintiff and Defendant.

22. As such, prospective clients are likely to be confused and/or assume an affiliation with Plaintiff when exposed to Defendant's materials.

23. Furthermore, any colors or graphic designs that Defendant adds to the mark are equally irrelevant in the infringement analysis, as Defendant is unquestionably using Plaintiff's word mark.

24. Plaintiff's and Defendant's products occupy the identical markets, and advertise to the same prospective customers. Thus, the goods and services are in such proximity that consumer confusion is the only logical result.

25. As such, prospective customers of Plaintiff and Defendant will begin by assuming there is an affiliation between Plaintiff and Defendant. Thereafter, they are unlikely to conduct sufficient research to confirm that the parties are actually unaffiliated.

26. Therefore, there can be no dispute that Defendant's usage of "DRESS UP BOLTS" creates a likelihood of confusion with Plaintiff's Registered Trademark, and that Defendant has infringed, and is still infringing Plaintiff's Registration.

### C. Plaintiff's Registration Was Upheld By The USPTO And The Federal Circuit

27. In response to Plaintiff seeking to enforce its trademark rights, on February 11, 2022, Defendant instituted Proceeding Number 92079042 against Plaintiff before the United States Patent and Trademark Office's Trademark Trial and Appeal Board ("TTAB") seeking to cancel Plaintiff's Registration Number 5,868,348.

28. Following a discovery period and trial period in such Proceeding, the TTAB ruled against Defendant in a Decision dated August 12, 2024. The TTAB ruled in Plaintiff's favor and upheld Plaintiff's Registration.

29. On October 16, 2024, Defendant instituted Appeal Number 25-1071 before the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), seeking to overturn the TTAB Decision.

30. Following full briefing and oral argument, the Federal Circuit ruled against Defendant in a Judgment dated March 11, 2026, wherein the Federal Circuit affirmed the TTAB's determination in its entirety. A copy of the Federal Circuit Judgment is attached hereto as **EXHIBIT C**.

31. Defendant did not seek United States Supreme Court review of the Federal Circuit Judgment. On April 17, 2026, pursuant to Rule 41 of the Federal Rules of Appellate Procedure, the Federal Circuit then issued its formal mandate to the TTAB to dismiss the Proceeding. A copy of the Federal Circuit Mandate is attached hereto as **EXHIBIT D**.

32. On June 25, 2026, the TTAB Proceeding was officially terminated.

**D. Damages For Trademark Infringement**

33. Based on the foregoing, Defendant clearly infringed Plaintiff's Registered Trademark and damages are presumed.

34. Plaintiff has expended significant time, effort, and resources in promoting its mark. Defendant is free riding on Plaintiff's trademark, enjoying revenues from using the trademark without the expenditures associated with truly developing same. Plaintiff is being damaged by Defendant's infringement, including lost revenues. Defendant has engaged in a full-scale, highly-orchestrated marketing campaign to promote the company's goods and services under the infringing mark. Such activities substantially decrease the value of Plaintiff's trademark by diluting its distinctiveness and compromising Plaintiff's exclusive rights to its usage and promotion. Allowing Defendant to continue infringing will cause further damage to Plaintiff, and defy the purpose of the United States Trademark Registration system.

35. Accordingly, Plaintiff seeks damages in the form of: (1) all of Defendant's profits with interest from the inception of Defendant's usage of the mark through conclusion of this action; (2) the damages sustained by Plaintiff; and (3) the costs of the action pursuant to 15 U.S.C. § 1117(a).

36. In addition, pursuant to 15 U.S.C. § 1117(b), Plaintiff also demands treble damages and attorneys' fees due to Defendant's bad faith and ongoing willful infringement.

37. Upon information and belief, Defendant has acted in bad faith, such as by registering *ZSPEC's* business name as a domain name with the obvious intent to unfairly curtail ZSPEC's business or otherwise damage ZSPEC.

38. Defendant also continues to promote the infringing mark after Defendant unsuccessfully litigated against Plaintiff twice, as outlined above, with full knowledge of Plaintiff's mark and Plaintiff's trademark rights.

## AS AND FOR A FIRST CAUSE OF ACTION

39. Plaintiff repeats and reiterates each and every allegation of paragraphs 1 through 38 set out herein, with the same force and effect as if fully set forth therein.

40. Plaintiff has made a substantial investment of time, money, skill, and effort to create a strong trade name and strong public association with the trademark "DRESS UP BOLTS" used in connection with "Metal bolts; Metal hardware, namely, washers".

41. Plaintiff was granted United States Trademark Registration Number 5,868,348 for the mark DRESS UP BOLTS, used in connection with "Metal bolts; Metal hardware, namely, washers", on September 24, 2019.

42. During Plaintiff's usage of the mark, markings appeared on its packaging and promotional materials serving as notice to the public that the mark was protected by the trademark laws.

43. Defendant has used, and is using Plaintiff's Registered Trademark in connection with the same goods offered by Plaintiff, offered to the same consumers.

44. Defendant's usage of Plaintiff's Registered Trademark is likely to cause confusion among relevant consumers.

45. Defendant has violated the terms of the Lanham Act, codified at 15 U.S.C. 1051, et seq.

46. Plaintiff has suffered and will continue to suffer economic losses due to the trademark infringement of Defendant, in violation of 15 U.S.C. 1051, et seq.

47. Plaintiff is unable to ascertain the amount of its actual damages at this time.

**WHEREFORE**, Plaintiff requests that:

A. It be adjudged that Plaintiff's Registered Trademark has been infringed by Defendant;

B. Defendant and its officers, directors, agents, representatives, attorneys and all persons acting and claiming to act on their behalf or under their direction or authority, and all persons acting in concert or participation with them, and each of them, be permanently enjoined from using Plaintiff's Registered Trademark and any and all marks confusingly similar thereto in the United States.

C. Defendant be required to account for its profits from infringement of Plaintiff's Registered Trademark;

D. That the Court award Plaintiff damages against Defendant in an amount adequate to compensate Plaintiff on their first cause of action;

E. That the Court award Plaintiff costs and disbursements of this action as provided by 15 U.S.C. 1117(a);

F. That the Court increase the amount of damages found or assessed for Defendant's infringement by three times, and award reasonable attorneys' fees, on account of the willful, intentional, and deliberate character of Defendant's infringing acts, as provided by 15 U.S.C. 1117(b); and

G. That the Court award Plaintiff such other and further relief as the Court deems just, proper, and equitable.

Dated: Calverton, New York
August 31, 2026

/s/ Todd Wengrovsky
Todd Wengrovsky
Law Offices of
Todd Wengrovsky, PLLC.
285 Southfield Road, Box 585
Calverton, NY 11933
Tel (631) 727-3400
Fax (631) 727-3401
contact@twlegal.com